UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CLEANSPARK, INC.                    :
                                    :
        Plaintiff,                  :
                                    :        20 Cv. 6164 (JSR)
        -v-                         :
                                    :        MEMORANDUM ORDER
                                    :
DISCOVER GROWTH FUND, LLC           :
                                    :
                                    :
        Defendant.                  :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

On August 4, 2020, plaintiff CleanSpark, Inc.
("CleanSpark"), a publicly traded software company, commenced
this action seeking declaratory and injunctive relief against
defendant Discover Growth Fund, LLC ("Discover"), an early
investor in CleanSpark, in order to prevent Discover from
pursuing any remedies in connection with certain "conversion
notices" through which Discover seeks to convert portions of two
convertible debt instruments into shares of CleanSpark's common
stock. By bottom line Order dated August 19, 2020, the Court
denied CleanSpark's motion for a temporary restraining order and
preliminary injunction. Dkt. No. 25. This Memorandum Order
provides the reasons for that ruling.

I.   Factual Background

     A. The Parties

CleanSpark, a Nevada company with its principal place of business in Utah, is a software and services company that offers software and intelligent controls for microgrid and distributed energy resource management systems. Verified Complaint ("Compl."), Dkt. No. 1-2, ¶ 9. Its stock is traded on the NASDAQ Global Select Market under the ticker symbol CLSK. Declaration of John Kirkland ("Kirkland Decl."), Dkt. No. 10, ¶ 29. Discover is an investment fund organized and operating under the laws of the United States Virgin Islands. Id. ¶ 14; Compl. ¶ 10.

B. The Agreements

Since 2018, Discover has made three separate investments in CleanSpark.

1. The Older Securities Purchase Agreements

In 2018 and 2019, CleanSpark and Discover entered into a pair of securities purchase agreements (collectively, the "Older SPAs"). Compl. ¶¶ 11, 15. In each agreement, CleanSpark sold, among other things, a convertible debt instrument to Discover. Id. ¶¶ 12, 16. The 2018 debt instrument (the "Debenture") has a face value of $5.25 million and a maturity date of December 31, 2020; the 2019 debt instrument (the "Note") has a face value of $10.75 million and a maturity date of April 17, 2021. Id. ¶¶ 13, 17. Collectively, the Debenture and the Note are here referred to as the "Debt Instruments." Under the Debt Instruments, CleanSpark agreed to convert, at Discover's request, all or any

2

portion of the face value of the Debt Instruments into shares of CleanSpark's common stock at any point over their respective two-year maturity periods. Dkt. No. 10-4 (the "Debenture"), § I.G.1.a.[1]

The procedures for such conversions are set forth in Section I.G. of the respective instruments. To exercise a conversion, Discover must deliver to CleanSpark a "conversion notice," specifying the amount of the face value to be converted and the corresponding number of shares to which it is entitled in light of the governing "conversion price." Debenture § I.G.1.b. The conversion price is roughly based on an average of the five lowest non-consecutive daily volume-weighted prices of CleanSpark's shares over the two-year term, subject to a floor of $1.50 per share. Dkt. No. 10-1 ("Term Sheet"), at 2; Amendment to Transaction Documents, Dkt. No. 10-20, § 2.A.[2]

Upon receiving a conversion notice, CleanSpark's obligation to deliver the specified number of shares is "absolute, unconditional and irrevocable," and no alleged breach by Discover will "excuse full and timely performance." Debenture § I.G.1.f. CleanSpark must, within one trading day, transmit the

---

[1]    Because the Debt Instruments have virtually identical terms, the Court cites for convenience only to the Debenture. Each cited provision is also found in the Note.

[2]    More precisely, the conversion price is 95 percent of that average, less $0.05 per share. Term Sheet.

notice to its transfer agent with instructions to immediately comply with the notice and deliver the specified number of shares. Id. § I.G.1.c. As a part of the agreement, CleanSpark also delivered an irrevocable instruction letter to its transfer agent, instructing that the agent must comply with a delivery notice and provide the conversion shares to Discover, "notwithstanding any contrary instructions" from CleanSpark. Dkt. No. 10-3 ("2018 SPA"), Ex. 3.[3]

In certain circumstances, the Debt Instruments also entitle Discover to additional shares in connection with an already-satisfied conversion notice. First, if, at any time before the end of the two-year maturity period, the conversion price drops, Discover is entitled to the additional shares it would have received under that new conversion price. Debenture § I.G.1.d. Second, if, at any time before the end of the two-year maturity period, there occurs a contractually specified negative event (a so-called "Trigger Event"), see id. § I.H., the conversion price is retroactively reduced, the interest rate is retroactively increased, and Discover is entitled to the additional shares it would have received under the new conversion price and interest

---

[3]     Because the Older SPAs have virtually identical terms, the Court cites for convenience only to the 2018 SPA. Each cited provision is also found in the 2019 SPA.

rate, id. §§ I.C.1, I.G.1.d, I.G.6.b.[4] The occurrence of three Trigger Events constitutes an "Event of Default," whereupon the above-mentioned conversion price floor collapses. Amendment to Transaction Documents, §§ 2.B, 2.C. Crucially, then, because CleanSpark's liability under these Debt Instruments can increase at any time over the two-year maturity period, the Debt Instruments cannot be fully redeemed until the conclusion of that two-year period.[5]

---

[4]   For example, if Discover were to initially deliver a conversion notice for $1 million and the conversion price were $5 per share, Discover would be entitled to 200,000 shares of common stock in connection with that conversion notice. If, six months after CleanSpark issued those shares, the conversion price fell from $5 per share to $4 per share, Discover could issue an additional notice to CleanSpark demanding the additional 50,000 shares to which it is entitled in light of the new conversion price.

[5]   CleanSpark seems to dispute this feature of the Debt Instruments and insists that they have been "fully converted," leaving a "balance of zero under both instruments." Plaintiff's Memorandum of Law in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction ("Pl. Mem."), Dkt. No. 1-7, at 12. This interpretation, however, conflicts with the plain terms of the Debt Instruments, which provide that "[i]f during or at the end of the [two-year maturity period] [Discover] is entitled to receive additional Conversion Shares with regard to an Initial Notice, [Discover] may at any time deliver one or more additional written notices to [CleanSpark] or its transfer agent . . . setting forth additional number of Conversion Shares to be delivered, and the calculation thereof." Debenture § I.G.1.d. In any event, CleanSpark will be free to make this argument in arbitration, which, as discussed below, is the proper forum for this dispute at the current juncture.

The Older SPAs also govern other aspects of the parties' relationship. As relevant here, the Older SPAs provide Discover a right of first refusal in connection with subsequent financing by third parties. Compl. ¶ 22. And they each include a "publicity clause," giving Discover the right to review and approve certain of CleanSpark's documents prior to publication or filing. Id. ¶ 20. The publicity clauses provide:

> [CleanSpark] will provide to [Discover], for review and approval prior to filing or issuing, that portion of any current, period or public report, registration statement, press release, public statement or communication relating to or referencing [Discover], any Transaction Documents or the transactions contemplated thereby, any such approval not to be unreasonably withheld.

2018 SPA § IV.D.

The Older SPAs and Debt Instruments contain anti-injunction and arbitration provisions, which proscribe CleanSpark's remedies in the event there a disagreement over the fact or amount of a conversion notice. As relevant here, the Debt Instruments provide:

> CleanSpark's obligations to issue and deliver Conversion Shares upon any Delivery Notice are absolute, unconditional and irrevocable; any breach or alleged breach of any representation or agreement, or any violation or alleged violation of any law or regulation, by any party or any other person will not excuse full and timely performance of any of [CleanSpark's] obligations under these sections; and under no circumstances may [CleanSpark] seek or obtain any temporary, interim or preliminary injunctive or equitable relief to prevent or interfere with any issuance of Conversion Shares to [Discover].

Debenture § I.G.1.f. The Older SPAs further provide:

> [CleanSpark] further acknowledges that it has an
> adequate remedy at law with respect to [the anti-
> injunction provisions] in a claim for money damages;
> accordingly, CleanSpark may not restrain or enjoin its
> transfer agent, [Discover] or any brokers from
> receiving or reselling any Conversion Shares, and any
> action for temporary, preliminary or final injunctive
> relief filed by [CleanSpark] or on its behalf will be
> immediately and automatically dismissed.

2018 SPA § VI.I.2. Finally, the Older SPAs contain

very broad arbitration provisions, which provide in

relevant part:

> Any dispute controversy, claim or action of any kind
> arising out of, relating to, or in connection with
> this Agreement, or in any way involving [CleanSpark]
> and [Discover] . . . will be resolved solely by final
> and binding arbitration in English before a retired
> judge at JAMS . . . .

2018 SPA § VI.H.

## 2. The 2020 Securities Purchase Agreement

In July 2020, CleanSpark, seeking to raise additional

capital, reached an agreement with a new investor in New York.

Compl. ¶ 23-24. Pursuant to the right of first refusal set out

in the Older SPAs, however, CleanSpark first afforded Discover

the opportunity to provide the same financing on the same

material terms as those agreed to with the new investor. Id. ¶

25. Discover exercised that right and, under the same terms

initially offered to the new investor, purchased an additional

$4 million worth of CleanSpark common stock. Id. ¶ 26; Kirkland

Decl. ¶ 85.

The 2020 Securities Purchase Agreement (the "2020 SPA")

contains a forum selection clause, which provides, in relevant

part:

> Each party hereby irrevocably submits to the exclusive
> jurisdiction of the state and federal courts sitting
> in the City of New York, Borough of Manhattan for the
> adjudication of any dispute hereunder or in connection
> herewith or with any transaction contemplated hereby
> or discussed herein (including with respect to the
> enforcement of any of the Transaction Documents), and
> hereby irrevocably waives, and agrees not to assert in
> any Action or Proceeding, any claim that it is not
> personally subject to the jurisdiction of any such
> court clause, that such Action or Proceeding is
> improper or is an inconvenient venue for such
> Proceeding.

Dkt. No. 10-33 ("2020 SPA"), § 5.9. The 2020 SPA also

contains a merger clause, which provides:

> The Transaction Documents, together with the exhibits
> and schedules thereto, the Prospectus and the
> Prospectus Supplement, contain the entire
> understanding of the parties with respect to the
> subject matter hereof and thereof and supersede all
> prior agreements and understandings, oral or written,
> with respect to such matters, which the parties
> acknowledge have been merged into such documents,
> exhibits and schedules."

Id. § 5.3.

Finally, the 2020 SPA contains its own "publicity clause,"

which directs CleanSpark to file an 8-K as required by federal

law and requires:

> each Purchaser [to] consult with each other in issuing
> any press releases with respect to the transactions

contemplated hereby, and neither the Company nor any
Purchaser shall issue any such press release nor
otherwise make any such public statement without the
prior consent of the Company, with respect to any
press release of any Purchaser, or without the prior
consent of each Purchaser, with respect to any press
release of the Company . . . .

Id. § 4.3

## C. The Alleged Trigger Events

After consummating the 2020 SPA, CleanSpark filed an 8-K
announcing the new transaction without giving Discover the
chance to review it. Compl. ¶ 44; Kirkland Decl. ¶¶ 90-91.
Discover insisted that CleanSpark's failure to provide the
document for review was a breach of the Older SPAs' publicity
clauses, and constituted a Trigger Event under the Debt
Instruments pursuant to which Discover is entitled to convert
additional shares. See Compl. ¶ 59. CleanSpark maintained,
however, that it filed the 8-K pursuant to the publicity clause
of the 2020 SPA, which does not afford Discover the chance to
preclear such documents. Id. ¶ 44; Pl. Mem. at 2-3. A few days
later, after another disagreement concerning the applicability
of the Older SPAs' publicity clauses, CleanSpark filed its 10-Q
without, according to Discover, receiving Discover's approval.
Kirkland Decl. ¶¶ 93-99. Based on those two alleged Trigger
Events, on August 4, 2020, Discover issued a conversion notice
requiring CleanSpark to issue and deliver 733,334 shares of
common stock at a conversion price of $1.50 per share — a

roughly 77% discount to CleanSpark's then-share price. Compl. ¶ 61.

### D. Procedural History

The next day, instead of issuing the shares, CleanSpark brought the instant action in New York State Supreme Court, seeking declaratory judgment that the 2020 SPA's publicity clause superseded the Older SPAs' publicity clauses, that CleanSpark had no obligation to provide Discover with the 8-K or the 10-Q before filing, and that Discover's conversion notices are therefore "null and void"; and a permanent injunction restraining Discover from pursuing any remedies in connection with these conversion notices. Compl. at 25. CleanSpark also moved for this temporary restraining order and preliminary injunction. Dkt. No. 1-2. On August 6, 2020, Discover removed the case to this Court. Dkt. No. 1.

During the briefing over the instant motion, Discover continued to assert its alleged rights under the Older SPAs, insisting that CleanSpark's failure to immediately issue the conversion shares was itself a Trigger Event warranting additional conversion notices. See Defendant Discover Growth Fund, LLC's Supplemental Memorandum of Law in Opposition to CleanSpark, Inc.'s Motion for a Temporary Restraining Order ("Def. Supp."), Dkt. No. 22, at 5. After identifying this third Trigger Event, Discover asserted an Event of Default, filed for

arbitration in the Virgin Islands, and scheduled a foreclosure sale on CleanSpark's assets, which CleanSpark pledged as collateral under the Older SPAs, for August 19, 2020 in the Virgin Islands. See Notice of Default and Notice of Sale of Collateral, Dkt. No. 21-4; Demand for Arbitration Form, Dkt. No. 21-6. After the Court scheduled oral argument on the motion, however, Discover cancelled the asset sale, while noting that it reserved the right to reschedule the sale in the event this Court denies CleanSpark's motion and CleanSpark continues to refuse to issue the conversion shares. See Email from John Kirkland to Zach Bradford dated August 14, 2020, Dkt. No. 21-8.

   II.  Legal Analysis

   CleanSpark now seeks a temporary restraining order and preliminary injunction against Discover restraining Discover from pursuing any remedies in connection with these conversion notices. In response, Discover offers four primary reasons for denying a preliminary injunction. It contends that CleanSpark has failed to establish: (1) this Court's authority to exercise personal jurisdiction over Discover; (2) that venue properly lies in this District; (3) a likelihood of success on the merits; and (4) that CleanSpark would suffer irreparable harm in the absence of injunctive relief. For the reasons set forth below, the Court holds that CleanSpark has failed to establish

this Court's personal jurisdiction over Discover, and denies the preliminary injunction on that basis.

## A. Personal Jurisdiction

A district court is "powerless to proceed" on a motion for preliminary injunction "in the absence of personal jurisdiction." Pablo Star Ltd. v. Welsh Gov't, 170 F. Supp. 3d 597, 611 (S.D.N.Y. 2016).[6] "In order to obtain a preliminary injunction, a plaintiff must make more than a 'prima facie showing of jurisdiction.'" NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd., No. 14-cv-3945, 2014 WL 2619588, at *3 (S.D.N.Y. Jun. 11, 2014) (quoting Weitzman v. Stein, 897 F.2d 653, 659 (2d Cir. 1990)). Instead, "the movant bears the burden of showing 'at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction' over the non-moving party." Alibaba Group Holding Ltd. v. Alibabacoin Foundation, No. 18-cv-2897, 2018 WL 5118638, at *2 (S.D.N.Y. Oct. 22, 2018) (quoting Weitzman, 897 F.2d at 659).

Discover contends that CleanSpark's motion must be denied because the Court lacks personal jurisdiction over it. The only basis on which this Court could exercise personal jurisdiction over Discover is through the forum selection clause contained in

---

[6]     Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

the 2020 SPA.[7] That clause provides, in relevant part, that each party "irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents)." 2020 SPA § 5.9.

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006). To determine whether a forum selection clause is enforceable, courts ask:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong

---

[7]    CleanSpark alleges in its Complaint, but does not argue in its briefs, that jurisdiction is proper under N.Y. CPLR § 301. Compl. ¶ 3. Section 301 provides that New York courts can exercise general personal jurisdiction over "persons, property, or status as might have been exercised heretofore." See Aybar v. Aybar, 93 N.Y.S.3d 159 (2d Dep't 2019). But the Court plainly does not have general personal jurisdiction over Discover, a Virgin Island business that is not "at home" in New York under any stretch of the term. See Daimler AG v. Bauman, 571 U.S. 117, 119 (2014).

showing that enforcement would be unreasonable or
unjust, or that the clause was invalid for such
reasons as fraud or overreaching.

Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014).

Here, Discover does not dispute whether the clause was

reasonably communicated or whether the clause is mandatory.

Instead, Discover maintains only that the claims involved in

this action are not subject to the forum selection clause.[8] In

particular, Discover points out that CleanSpark is seeking a

declaratory judgment absolving it of its alleged breach of the

Older SPAs, including CleanSpark's filing its 8-K and 10-Q

without prior approval from Discover, its refusal to immediately

issue the conversion shares, and its failure to instruct its

transfer agent to issue the shares. Def. Mem. at 5, 13. To the

extent the 2020 SPA is relevant, Discover maintains, it is only

as a defense to CleanSpark's alleged breach of the Older SPAs.

Id. at 13 n.6.

---

[8]    Unlike questions about the enforceability of a forum
selection clause (which is governed by federal law), questions
about the scope of a forum selection clause are typically
"resolved under the substantive law designated in an otherwise
valid contractual choice-of-law clause." Bloomberg, 740 F.3d at
214. While the 2020 SPA provides that it is to "be governed by
and construed and enforced in accordance with the internal laws
of the State of New York," 2020 SPA § 5.9, the Court "assume[s]
from the parties' briefing that they do not rely on any
distinctive features of [New York] law and appl[ies] general
contract law principles and federal precedent to discern the
meaning and scope of the forum clause," see Phillips v. Audio
Active Ltd., 494 F.3d 378, 386 (2d Cir. 2007).

Discover cites to Phillips, 494 F.3d at 390-91, for the
proposition that because the 2020 SPA is only relevant as a
defense, its forum selection clause is inapplicable to the
instant dispute. Id. at 13. But Discover's reliance on Phillips
is misplaced. There, the Second Circuit held that statutory
claims do not "arise out of" a contract containing a forum
selection clause unless the rights or duties being sued upon
"originate from the contract." Id. Phillips, however, went on to
draw a distinction between narrow forum selection clauses, which
only cover claims "arising out of" the contract," and broad
clauses, which also cover claims "related to" or "in connection
with" the contract. Id. at 389; see also Production Resource
Group, L.L.C. v. Martin Professional, A/S, 907 F. Supp. 2d 401,
412 (S.D.N.Y. 2012) ("Courts have identified at least two
categories of terms describing the scope of a forum selection
clause. The narrower category includes terms such as 'arise out
of,' 'arise from,' or 'arising under,' whereas the broader
category includes terms such as 'in connection with,' 'relating
to,' or 'associated with.'"). Therefore, Phillips, which dealt
with a narrow forum selection clause, does not resolve whether
the instant dispute is "in connection" with the 2020 SPA. Cf.
Policy Administration Solutions, Inc. v. QBE Holdings, Inc., No.
15-cv-2473, 2019 WL 4126464, at *6 (S.D.N.Y. Aug. 30, 2019)
(observing that a party's citation to Phillips is inapposite

where the contract at issue uses broader language than was
considered in Phillips).

Since Phillips, courts in this district have consistently
held that "[w]here broadly worded, a forum selection clause is
not limited solely to claims for breach of the contract that
contains it." KTV Media Intern., Inc. v. Galaxy Group, LA LLC,
812 F. Supp. 2d 377 (S.D.N.Y. 2011). The question here, then, is
whether a defense based on a contract that contains a forum
selection clause is "in connection" with that contract. On that
question, Phillips itself cited favorably to an out-of-circuit
case that expressly held that a broad forum selection clause
"easily encompasses a dispute in which the [contract] is raised
as a defense." See John Wyeth & Bro. Ltd. v. CIGNA Intern.
Corp., 119 F.3d 1070, 1076 (3d Cir. 1997). And courts in this
Circuit have since held that broad forum selection clauses can
apply to claims where the contract is relevant as a defense.
See, e.g., Production Resource Group, 907 F. Supp. 2d at 415
("Defendant might invoke the Agreements as a defense to
Plaintiff's patent infringement allegations, thereby making the
'dispute' one that is 'related to the' Agreements and,
therefore, to be decided 'in accordance with' the forum
selection clause . . . in each Agreement.").

Here, Discover fails to account for "how broadly the
clause[] [is] worded." Cfirstclass Corp. v. Silverjet PLC, 560

F. Supp. 2d 324, 329 (S.D.N.Y. 2008). Indeed, the 2020 SPA's forum selection clause does not just cover disputes arising under the 2020 SPA but also those "in connection herewith." 2020 SPA § 5.9. The instant dispute concerns, in part, whether and to what extent the 2020 SPA's publicity clause supersedes the Older SPAs' publicity clauses. Indeed, CleanSpark's argument is that the 2020 SPA's publicity clause "expressly supersede[s] Discover's purported right under [the Older SPAs] to review and approve the SEC reports by CleanSpark prior to filing," Compl. ¶ 42, and therefore Discover's conversion notices, all of which, it alleges, trace back to that 8-K filing, are null and void. To determine whether CleanSpark is right, the Court would have to consider, among other things, the meaning and reach of the 2020 SPA's publicity clause. Accordingly, the Court finds that CleanSpark's claims are "in connection" with the 2020 SPA. Cf. NY Metro Radio Korea, Inc. v. Korea Radio USA, Inc., No. 07-cv-4123, 2008 WL 189871, at *4 (E.D.N.Y. Jan. 18, 2008) ("Because the Court's determination of the rights and duties of the parties will depend on the interpretation of the [contract], plaintiff's lawsuit constitutes a dispute regarding that contract.").

That does not, however, settle the issue of personal jurisdiction. In addition to the 2020 SPA's forum selection clause, the Court must also contend with the arbitration

provisions in the Older SPAs. As Discover explains, those
provisions subject to arbitration all disputes "of any kind
arising out of, relating to, or in connection with [the Older
SPAs], or in any way involving" CleanSpark and Discover. Def.
Mem. at 13 (quoting 2018 SPA § VI.H). The language in those
arbitration provisions is clearly broad enough to cover the
instant dispute, where CleanSpark is ultimately seeking to
prevent Discover from exercising its alleged conversion rights
under the Older SPAs.

Faced with two contractual provisions – one establishing
personal jurisdiction in this Court and another requiring
arbitration elsewhere – the Court must determine which applies
to the instant dispute. Clearly, the forum selection clause
would govern claims "arising out" of the 2020 SPA that are not
"in connection with" the Older SPAs. For example, if CleanSpark
alleged that Discover had failed to convey the consideration in
exchange for the shares under the 2020 SPA, that claim could –
indeed, must – be litigated in New York, and the Court would
plainly have personal jurisdiction over Discover to resolve such
a dispute.[9] Conversely, the arbitration provisions govern claims

---

[9]    For this reason, CleanSpark's suggestion at oral argument
that the forum selection clause would be "superfluous" if it did
not supersede the earlier-in-time arbitration provisions is off-
base. See Transcript of Oral Argument dated August 17, 2020 at
14:4. Cf. PB Life and Annuity Co. Ltd. v. Universal Life
Insurance Company, No. 20-cv-2284, 2020 WL 2476170, at *9

"arising out" of the Older SPAs that are not "in connection with" the 2020 SPA. For example, if CleanSpark alleged that Discover miscalculated the number of shares it was owed under some conversion notice, that claim could – indeed, must – be sent to arbitration, and this Court would have no personal jurisdiction over Discover with respect to such a claim.

This case, however, falls somewhere in between: It "arises under" the Older SPAs because Discover has accused CleanSpark of violating numerous provisions contained therein, but it is also "in connection with" the 2020 SPA because CleanSpark has pointed to that contract as a defense to absolve it of its alleged breach of the Older SPAs. In a word, then, it implicates both sets of contracts.

CleanSpark suggests that the forum selection clause supersedes the arbitration provisions "to the extent that this dispute falls within the scope" of both provisions. Plaintiff's Reply Memorandum of Law in Further Support of its Motion for a Temporary Restraining Order and Preliminary Injunction ("Pl. Reply"), Dkt No. 18, at 8-9. Taking the opposite tack, Discover

---

(S.D.N.Y. May 12, 2020) ("Without saying whether this particular dispute falls within the scope of the arbitration clause of the [earlier agreement] or the forum-selection clause of the [later agreement] . . . there is ample room for the operation of the forum-selection clause in the many disputes that would not rest on or come within the scope of the [earlier agreement]."

contends that the forum selection clause does not supersede the arbitration provisions, which control this action. Def. Supp. at 7-8. To determine whether there is personal jurisdiction over Discover, then, the Court must determine which clause governs the instant dispute.[10]

"Whether the forum-selection clause in [a later-in-time agreement] supersedes the arbitration clauses in the earlier

---

[10]   To be sure, where a later-in-time forum selection clause arguably wholly supersedes the earlier-in-time arbitration agreement – that is, where there is a threshold question "whether a valid arbitration agreement exists" at all Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 530 (2019) – a court must independently determine whether the agreement to arbitrate is still enforceable before analyzing any issues regarding the scope of arbitrability. See, e.g., PB Life, 2020 WL 2476170, at *5; Mobile Real Estate, LLC v. NewPoint Media Group, LLC, No. 19-cv-11475, 2020 WL 2521451, at *11 n.10 (S.D.N.Y. May 18, 2020). In such cases, a court must take care to remember that "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522, 526 (2d Cir. 2011). Here, however, CleanSpark does not argue that the arbitration provisions in the Older SPAs have been wholly displaced by the forum selection clause in the 2020 SPA; instead, CleanSpark contends that the arbitration clauses have been superseded only "to the extent that this dispute falls within the scope" of both the forum selection clause and the arbitration provisions. See Pl. Reply at 8-9; see also id. at 10 (clarifying that CleanSpark does not seek a declaration that "the [2020] SPA supersedes the entirety of the parties' earlier agreements."). Accordingly, the Court need not pause on the threshold question whether the arbitration provisions "remains in force in light of [the] later-executed agreement," Goldman, Sachs & Co., 764 F.3d at 215, and instead proceeds directly to the question of scope.

agreements presents a question of arbitrability." TAPCO
Underwriters, Inc. v. Catalina London Ltd., No. 14-cv-8434, 2014
WL 7228711, at *2 (S.D.N.Y. Dec. 8, 2014) (citing Goldman, Sachs
& Co. v. Golden Empire Sch. Fin. Auth., 764 F.3d 210, 214 (2d
Cir. 2014)). Ordinarily, questions of arbitrability – i.e.,
questions regarding whether a claim is subject to arbitration –
are to be determined by courts, rather than arbitrators. See
Metropolitan Life Insurance Co. v. Bucsek, 919 F.3d 184, 190 (2d
Cir. 2019). But where a party presents "clear and unmistakable"
evidence of an agreement to arbitrate arbitrability, a court is
bound to respect that agreement. See id. at 190-91.

The Court finds such clear and unmistakable evidence here.
While arbitration agreements "rarely . . . directly state
whether the arbitrator or the court will decide the issue of
arbitrability," id. at 191, this is such a case. Indeed, the
arbitration provisions in the Older SPAs expressly provide that
any dispute of any kind "including any issues of arbitrability .
. . will be resolved solely by final and binding arbitration."
2018 SPA § VI.H. As a result, it is up to an arbitrator – not
this Court – to decide the extent to which the arbitration
clauses in the Older SPAs have been superseded by the forum
selection clause in the 2020 SPA.[11] Because the Court cannot

---

[11]   It is also for this reason that the Court cannot hold – as
other courts in this Circuit have – that the forum selection and

21

hold, in the first instance, that the forum selection clause,
rather than the arbitration provisions, governs this dispute,
the Court accordingly holds that CleanSpark has failed to
satisfy its burden of showing a reasonable likelihood that the
Court has personal jurisdiction over Discover. On this basis,
CleanSpark's motion must be denied.[12]

---

arbitration clauses can each govern distinct portions of this
dispute. In Discover Property & Cas. Ins. Co. v. TETCO, Inc.,
932 F. Supp. 2d 304, 310 (D. Conn. 2013), for example, the
district court, faced with putatively conflicting forum
selection and arbitration clauses, held that they could be
"interpreted in such a way that they do not conflict — i.e.,
under the forum selection clause in the [later-in-time
agreement], the Court has personal jurisdiction over [the
defendant] for the purpose of determining whether the
arbitration clause in the [later-in-time agreement] is valid and
arbitration should be compelled." Whereas in TETCO, the court
held that the question of arbitrability was for judicial
determination, the Court here holds that that question is itself
reserved for the arbitrator.

[12]   Because the Court denies CleanSpark's motion on
jurisdictional grounds, it need not reach the question whether
CleanSpark can satisfy the other requirements for injunctive
relief. But even if there were an independent basis for
asserting personal jurisdiction over Discover (which there is
not), the Court would still deny CleanSpark's motion. That is
because the same issues that prevent CleanSpark from
establishing this Court's personal jurisdiction over Discover –
viz. the earlier-in-time arbitration provisions require that the
arbitrator decide issues of arbitrability – would also preclude
CleanSpark from establishing a likelihood of success on the
merits. Put simply, Discover has issued a series of conversion
notices on the ground that CleanSpark has violated several
provisions of the Older SPAs. If CleanSpark "wishes to argue
that such provisions do "not survive the passage of the 2020 SPA
or that a dispute that implicates both the 2020 SPA and the
[Older SPAs] is outside the scope of the arbitration clause[s]
of the [Older SPAs], that argument is properly presented to the
arbitrator." PB Life, 2020 WL 2476170, at *1.

\* \* \* \* \*

In its bottom line Order dated August 19, 2020, the Court observed that there is a "high likelihood that the Court will refer the case to arbitration." Dkt. No. 25. However, because the Court now holds that CleanSpark has failed to establish the Court's personal jurisdiction over Discover, the Court declines to sua sponte refer the case to arbitration. Instead, for now and in the current posture, the Court simply denies CleanSpark's motion for a temporary restraining order and preliminary injunction.

SO ORDERED.

Dated: New York, NY

September 9, 2020

_____

JED S. RAKOFF, U.S.D.J.